# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| PDX NORTH, INC.,<br><br>   Plaintiff,<br><br> v.<br><br>HAROLD J. WIRTHS,<br><br>   Defendant. | Civil Action No. 15-7011 (BRM)<br><br>MEMORANDUM OPINION |
| SLS DELIVERY SERVICES INC.,<br><br>   Movant,<br><br> v.<br><br>HAROLD J. WIRTHS,<br><br>   Respondent. | |

**BONGIOVANNI, Magistrate Judge**

  Pending before the Court is proposed Intervenor SLS Delivery Services Inc.'s ("SLS") motion to intervene as a plaintiff in this matter. (Docket Entry No. 39). Defendant Harold J. Wirths ("Defendant"), sued in his official capacity as the Commissioner of the Department of Labor and Workforce Development of the State of New Jersey ("NJDOL"), opposes SLS's motion. Plaintiff PDX North, Inc. ("Plaintiff" or "PDX"), has taken no position with respect to SLS's motion to intervene. The Court has fully reviewed and considered all arguments made in support of and in opposition to SLS's motion. The Court considers SLS's motion to intervene without

1

argument pursuant to L.Civ.R. 78.1(b). For the reasons stated below, SLS's motion is GRANTED.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed its Complaint in this matter on September 22, 2015, seeking to "declare void and permanently enjoin the enforcement of N.J.S.A. § 43:21-19(i)(6), the New Jersey Independent Contractor Statute (the 'NJ Independent Contractor Statute'), against PDX," claiming that enforcement of the NJ Independent Contractor Statute against Plaintiff would violate the Federal Aviation Administration Authorization Act of 1994 ("the "FAAAA"). (Pl. Cmplt. ¶1). Through its Complaint, Plaintiff also sought to "declare void N.J.S.A. § 43:21-19(i)(7)(X), an exemption to the NJ Independent Contractor Statute for certain commercial truck drivers," also claiming that this exemption (the "NJ Commercial Truck Drivers Exemption") violated the FAAAA. (*Id*. ¶2). In lieu of answering Plaintiff's Complaint, Defendant moved to dismiss same on October 30, 2015. (Docket Entry No. 12). Plaintiff opposed Defendant's motion and also cross moved for summary judgment on January 5, 2016. (Docket Entry No. 16). The District Court denied both parties' motions on May 31, 2016 and directed the parties to submit a proposed schedule. (Docket Entry Nos. 22 & 23).

On June 14, 2016, the Court entered its initial Scheduling Order. (Docket Entry No. 24). According to same, written discovery demands would be served by July 29, 2016, fact depositions would take place by December 31, 2016, expert discovery would be complete by August 18, 2017, and dispositive motions would be filed by October 16, 2017. (*Id.*) It became apparent to the Court that these dates would need to be adjusted when, during a telephone conference held on December 19, 2016, the parties represented that Plaintiff had not yet produced any documents because the parties needed to work out a confidentiality order. As a result, the Court directed the

2

parties to submit a confidentiality order by December 23, 2016 and indicated that a revised schedule would thereafter be entered. (*See* Text Minute Entry of 12/19/2016). Shortly after receiving and entering the parties' Stipulated Confidentiality Order (Docket Entry No. 30), the Court directed the parties to submit a proposed revised schedule. (Docket Entry No. 31). In light of the fact that the parties could not agree on a discovery schedule, the Court set a telephone conference to discuss same, but also directed the parties to continue with document/interrogatory discovery. (Docket Entry No. 32). As discussed during the telephone conference held on March 30, 2017, the Court entered a schedule on March 31, 2017 requiring Plaintiff to conduct depositions of fact witnesses necessary for the production of its expert report by June 30, 2017. (Docket Entry No. 33). The Court also set September 29, 2017 as the deadline for Plaintiff's production of its expert report and October 20, 2017 as the date by which Defendant would advise what depositions were necessary for him to challenge Plaintiff's expert report and/or produce its expert report. (*Id.*)

At the parties' request, on September 13, 2017, the Court again extended the schedule in this matter, postponing all remaining deadlines by 30 days. (Docket Entry No. 34). A subsequent extension occurred on November 15, 2017, when the Court, in part to afford Defendant time to transition the case to new counsel, extended the fact discovery end date to February 28, 2018, set a telephone conference for February 5, 2018 and indicated that the remaining schedule would be set at the time of the conference. (Docket Entry No. 36). Shortly after the last extension was granted, SLS filed the instant motion to intervene. In light of said motion, on February 2, 2018, the Court stayed the discovery deadlines, though It also directed the current parties to continue with document/interrogatory discovery. (Docket Entry No. 48). To date, it is the Court's understanding that no depositions have taken place, though substantial paper discovery has been exchanged and Plaintiff has produced two expert reports.

3

SLS filed the instant motion seeking permission to intervene in this matter pursuant to Fed.R.Civ.P. ("Rule") 24(b). SLS argues that permissive intervention is appropriate because, "[t]he questions of law or fact raised by proposed plaintiff SLS's complaint are in common with those raised by PDX." (SLS Br. at 2; Docket Entry No. 40). In this regard, SLS notes that like Plaintiff, it is a motor carrier. (*Id*.) SLS also notes that, as with Plaintiff, NJDOL has initiated an audit of SLS to review SLS's use of independent contractors as drivers. Further, SLS argues that it has sufficient grounds to believe that NJDOL will determine that "all drivers are deemed as employees and should be treated as such." (*Id*.) SLS contends that "there are three criteria for permissive intervention: (1) the motion must be timely, (2) the main action must have a question of fact or law in common, and (3) the movant must have an independent ground for federal jurisdiction[,]" and that it has met all three criteria. (*Id*. at 4).

With respect to timeliness, SLS contends that the Court examines three factors: (1) "'[h]ow far the proceedings have gone when the movant seeks to intervene, (2) [the] prejudice which resultant delay might cause to other parties, and (3) the reason for the delay.'" (*Id*. at 5 (quoting *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982) (citation omitted))). SLS claims that these factors support its request to intervene, arguing that "no proceedings of substance or dispositive nature have occurred" and surmising that since discovery has not ended and "Defendant has recently requested additional time for the transition of the case to new counsel . . . there would be no prejudice to the parties if SLS is permitted to intervene in this litigation as a plaintiff." (*Id*.) SLS also points out that it only received the NJDOL's notice informing it of the NJDOL's audit in October 2017, less than two months prior to it filing its motion. Thus, SLS argues it did not delay in seeking permission to intervene.

Further, SLS argues that permissive intervention is appropriate because through its proposed Complaint, SLS seeks to raise the same causes of action as Plaintiff and, as such, its proposed Complaint involves common questions of law with Plaintiff's. SLS additionally argues that there are common questions of fact between its proposed Complaint and Plaintiff's Complaint. Specifically, SLS contends that both it and Plaintiff are motor carriers and both have been targeted by the NDOL for audits for a "determination of the same issue involving the classification of their drivers as employees instead of independent contractors." (*Id*. at 6).

Finally, SLS claims that it has an independent ground for federal jurisdiction, noting that its "causes of action are not based on state law grounds or diversity jurisdiction." (*Id*. at 8). As a result, SLS argues that here, there are no concerns that SLS is trying to use permissive intervention to improperly enlarge the jurisdiction of this Court. Consequently, SLS argues that its motion should be granted.

Defendant, however, argues that SLS's motion should be denied because it is untimely and will prejudice Defendant. Defendant also claims that SLS's motion should be denied because SLS's interests are adequately represented by Plaintiff. With respect to timeliness, Defendant points to the same three factors as SLS. Defendant, however, argues that the first two – (1) the stage of the litigation; and (2) the prejudice that delay may cause the parties – "weigh in defendant's favor." (Def. Opp'n Br. at 5-6; Docket Entry No. 46). With respect to the stage of these proceedings, Defendant argues that substantial fact discovery has been exchanged, with "tens of thousands of pages of paper discovery" being produced, one round of dispositive motions has already been decided, and "[t]he parties are in the process of finalizing expert discovery." (*Id*. at 6-7). Thus, Defendant argues that this matter is quite advanced.

Further, in addition to being advanced, Defendant argues that it would be prejudiced by SLS's addition to this matter.[1] In this regard, Defendant claims that the introduction of SLS as a party would "require the expenditure of significant resources and the exchange of even more paper and expert discovery." (*Id*. at 6). Defendant argues that "[i]t would be inequitable and would otherwise delay this matter to expand and complicate the litigation by adding an additional plaintiff at a time when the sole issue before the court is more than adequately represented by PDX and its expert(s)." (*Id*. at 7). Defendant further argues against permitting SLS to intervene, claiming that because the NJDOL has not actually assessed SLS, "the parties' ability to proceed to trial would be delayed by virtue of the fact that only attempts to conduct an audit investigation have been initiated." (*Id*.) In light of the foregoing, Defendant argues that the relevant factors militate against allowing SLS to intervene.

Moreover, Defendant argues that SLS's request for permissive intervention should be denied because regardless of the aforementioned factors, permissive intervention is "still within the court's discretion" and the Court should exercise this discretion against intervention when, as here, the proposed intervenor will not add anything to the litigation and its interests are already adequately represented in the litigation. Specifically, Defendant claims that it is SLS's burden to demonstrate that its interests are not already represented and SLS has failed to do so. (*Id*. at 8-9). In this regard, Defendant argues that "SLS makes no attempt to hide that its claims are identical to PDX's; no substantive facts, evidence or arguments have been offered to distinguish its position from PDX's; and there are no additional rights asserted that must be protected." (*Id*. at 10). As a

---

[1] Defendant also claims that Plaintiff would be prejudiced if SLS were permitted to intervene. The Court gives no weight to this argument as Plaintiff had the opportunity to oppose SLS's motion but chose not to do so. Plaintiff, not Defendant, has standing to argue prejudice on its behalf.

result, Defendant argues that SLS's interests are adequately represented by Plaintiff and, consequently, SLS's motion should be denied.

In reply, SLS argues that Defendant's conclusory arguments about prejudice should be discounted as Defendant has not provided any details or specifics as to how or why it would be prejudiced by SLS's intervention. Indeed, SLS claims that while Defendant has noted that the parties have exchanged tens of thousands of pages of paper discovery and Plaintiff has served two expert reports, Defendant:

> [D]oes not provide any detail about how SLS's intervention in this case relates to the exchange of the written paper discovery. That is, defendant does not indicate or explain how much, if any, of the paper discovery has been reviewed by the defendant –much less claim that it has already reviewed and evaluated the tens of thousands of pages of paper discovery. Defendant also does not claim that it is ready to engage in depositions immediately, but will be forced to delay them if SLS is permitted to join the litigation. Therefore, there is no clear indication or confirmation that defendant will be prejudiced, or any explanation as to how it will be prejudiced.

(Pl. Reply at 1-2; Docket Entry No. 47). Moreover, SLS contends that a denial of its motion would actually create more work for Defendant not less in that Defendant would have to face SLS's claims in a separate litigation, *i.e.,* "defendant will have to attend separate hearings in two separate cases, file separate motions in two separate cases, etc." (*Id*. at 2). SLS claims that proceeding in this fashion would not only result in more work for Defendant, but would also result in a waste of judicial resources and runs the risk of "conflicting decisions and opinions on the same legal issue" being rendered. (*Id*.)

Further, SLS argues that, despite Defendant's claims to the contrary, its interests are not adequately represented by Plaintiff. In this regard, SLS notes that Plaintiff and SLS are not associated in any way and Plaintiff "is not necessarily interested in, or concerned with, SLS or its

7

claims. (*Id*. at 3). Indeed, SLS notes that a comparison of both of their Complaints establishes that "their businesses are not, in every respect, identical to one another." (*Id*.) As a result, SLS argues "there is no guarantee that any ruling in favor of PDX will necessarily and automatically protect the interests of SLS." (*Id*.) SLS contends that this is sufficient to meet its minimal burden of proving that its interests are not adequately represented by Plaintiff. Further, SLS argues that Rule 24(b) requires the intervenor to have a claim or defense that shares a common question of law or fact with the main litigation. Therefore, the similarities between its proposed Complaint and Plaintiff's Complaint support its request for intervention, not the opposite. (*Id*. at 3-4). As a result, SLS asks the Court to grant its motion.

## II. ANALYSIS

Rule 24(b) governs permissive intervention. According to the Rule, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Rule 24(b)(1)(B). Whether to allow permissive intervention is left to the sound discretion of the court. Though in exercising that discretion, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Rule 24(b)(3).

Here, there is no doubt that SLS's claims share a common question of law or fact with that of Plaintiff's. Indeed, Defendant concedes as much. Instead, the main issue faced by the Court is whether SLS's motion is timely and nonprejudicial. "A district court's timeliness inquiry for both types of Rule 24 motions requires considering the totality of the circumstances arising from three factors: '(1)the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay.'" *Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016) (quoting *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005)). The Court addresses each in turn.

In assessing the first factor – the stage of the proceeding – the Court looks at "'what proceedings of substance on the merits have occurred,' rather than considering '[t]he mere passage of time[.]'" *Id*. at 375 (quoting *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (1995)). Here, at the case's inception, the District Court considered and denied Defendant's motion to dismiss and Plaintiff's cross motion for summary judgment. While clearly substantive and substantial in nature, the timing of these motions, again, they were filed at the outset of litigation, and the District Court's denial of same, means they have little impact on the Court's assessment of the current stage of these proceedings. More relevant is the fact that significant paper discovery has been exchanged to date as well as the fact that Plaintiff has served two expert reports. Nevertheless, the Court is mindful of the fact that fact discovery remains open. Indeed, it was recently extended prior to SLS filing its motion in this case in part to allow Defendant to transition new counsel onto this matter. Further, while significant paper discovery has taken place, depositions have not. Moreover, while Plaintiff has served two expert reports, this occurred in part because a nontraditional schedule was entered in light of Plaintiff's representation that certain information normally produced in fact discovery would be disclosed in its expert reports. As a result, on balance, the Court finds that this factor is equivocal, neither truly supporting nor militating against permitting SLS to intervene.

As to the second factor – prejudice that delay may cause the parties – the Court notes that it must "assess the prejudice that would befall either party that is 'attributable to any time delay.'" *Id*. at 377 (quoting *Mountain Top Condo. Ass'n*, 72 F.3d at 370). As explained in more detail below, there was no significant delay here. As a result, it is hard to see how Defendant would be prejudiced from same. Moreover, even if the Court were to look at prejudice without regard to any time delay, the Court finds the risk of same to be small. In this regard, as already noted, fact

9

discovery remains open. While Plaintiff and Defendant have exchanged significant paper discovery, their exchange is not yet complete. Moreover, depositions remain to be taken. Further, regardless of whether SLS is permitted to intervene, Defendant will have to address SLS's claims, either here or in a separate litigation. The Court finds that it would be most economical and efficient to do so in one litigation, then have to waste resources litigating two separate cases with separate hearings, etc. The party who theoretically would be most "prejudiced" by permitting SLS to intervene would be Plaintiff. Yet Plaintiff has raised no objections to SLS's proposed intervention in this matter. As a result, the Court finds that this factor weighs in favor of permitting SLS to intervene.

Lastly, the Court considers the reasons for SLS's delay. Importantly, with respect to delay, "'[t]o the extent the length of time an applicant waits before applying for intervention is a factor in determining timeliness, it should be measured from the point at which the applicant knew or should have known, of the risk to its rights.'" *Id*. at 375-76 (quoting *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1183 (3d Cir. 1994)). Here, it was not until October 2017 that SLS learned of the NJDOL audit. SLS moved to intervene less than two months later. This is not a meaningful delay. As such, the Court finds that this factor favors permitting SLS to intervene.

On balance, considering the totality of the timeliness factors, the Court finds that they weigh in favor of granting SLS's motion to intervene. As a result, in light of the fact that SLS's proposed claims share common questions of law and fact with those already present in this case, the Court finds that SLS should be permitted to intervene absent some other compelling reason for the Court to exercise its discretion otherwise.

Despite Defendant's arguments to the contrary, the purported ability of Plaintiff to represent SLS's interests does not convince the Court to deny SLS's motion to intervene. Instead, the Court

finds that SLS has met its burden of establishing that Plaintiff is not an adequate representative of its interests. In this regard, the Court notes that, as Defendant argues, it is SLS's burden to establish that its interests are not adequately represented by Plaintiff. *Hoots v. Commonwealth of Pa.*, 672 F.2d 1133, 1135 (3d Cir. 1982). The Court, however, also notes that SLS's burden in this regard "should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972); *Hoots*, 672 F.2d at 1135 (noting that the intervenor's burden to establish that adequate representation does not exist is "minimal" in light of Supreme Court's decision in *Trbovich*, 404 U.S. at 538 n. 10). Indeed, SLS need only show that Plaintiff's representation of its interests "'may be' inadequate" to satisfy its burden. *Id*.

> This burden maybe discharged in two ways. The applicant may demonstrate that its interests, though similar to those of an existing party, are nevertheless sufficiently different that the representative cannot give the applicant's interest proper attention. Alternatively, the applicant may establish collusion between the representative and an opposing party, or an indication that the representative has not been diligent in prosecuting the litigation.

*Hoots*, 672 F.2d at 1135 (citations omitted).

The Court finds that SLS has met its minimal burden here. While SLS's interests are undeniably similar to Plaintiff's, differences exist that convince the Court that Plaintiff's representation of those interests may be inadequate. As SLS notes, it is not affiliated or otherwise associated with Plaintiff. Further, SLS's business is not identical in every respect to Plaintiff's. As a result, there is no guarantee that a ruling in Plaintiff's favor will inure to the benefit of SLS. Instead, SLS's interests could go unprotected. As a result, the Court shall permit SLS to intervene in this matter.

## III. CONCLUSION

For the reasons stated above, SLS's motion to intervene is GRANTED. An appropriate Order follows.

Dated: July 26, 2018

                                                    /s/ Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**