**FOX ROTHSCHILD LLP**
Formed in the Commonwealth of Pennsylvania
By:    Jack L. Kolpen, Esq.
        Ian D. Meklinsky, Esq.
        Corinne McCann Trainor, Esq.
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ  08648-2311
Tel: (609) 896-3600
Fax: (609) 896-1469
CTrainor@FoxRothschild.com
*Attorneys for Plaintiff PDX North America, Inc.*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PDX NORTH, INC., <br><br>       Plaintiff, <br><br>       v. <br><br>ROBERT ASARO-ANGELO, in his official capacity as THE COMMISSIONER OF THE DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT OF THE STATE OF NEW JERSEY, <br><br>       Defendant. | Civil Action No. 3:15-cv-07011-BRM-TJB <br><br><br>**AMENDED COMPLAINT** |

Plaintiff PDX North America, Inc. ("PDX"), by way of Complaint against Defendant Robert Asaro-Angelo, in his official capacity as the Commissioner of the Department of Labor and Workforce Development of the State of New Jersey, hereby alleges and states as follows:

### INTRODUCTION

1.     Plaintiff PDX North America, Inc. ("PDX") brings this suit to declare void and permanently enjoin the enforcement of N.J.S.A. § 43:21-19(i)(6), the New Jersey Independent Contractor Statute (the "NJ Independent Contractor Statute"), against PDX because its

enforcement violates of the Federal Aviation Administration Authorization Act of 1994 (the "FAAAA" or the "Act").

2.       PDX also brings this lawsuit to declare void N.J.S.A. § 43:21-19(i)(7)(X), an exemption to the NJ Independent Contractor Statute for certain commercial truck drivers, the "NJ Commercial Truck Drivers Exemption," because it also violates the FAAAA.

3.       Congress enacted the FAAAA to ensure that transportation rates, routes, and service reflect "maximum reliance on competitive market forces" to stimulate "efficiency, innovation, and low prices" as well as variety and quality.

4.       To prevent states from impermissibly restricting motor carriers engaged in interstate commerce, Congress employed broad preemption language in the FAAAA, which prohibits states from "enacting or enforcing a law, regulation, or other provision… related to a price, route, or service" of any motor carrier.

5.       To comply with the NJ Independent Contractor Statute, PDX must fundamentally change its business model or risk significant civil and criminal penalties.

6.       It is assumed, for purposes of this action, that under the NJ Independent Contractor Statute, PDX is unable to disprove any one or more of the three prongs and that application of this test would require PDX to exclusively use employees as defined by New Jersey law.

7.       Because application of the NJ Independent Contractor Statute necessarily yields the conclusion that PDX's workers are "employees" and are not "independent contractors," enforcement of the NJ Independent Contractor Statute substantially and adversely affects PDX's prices, routes, and/or services and is preempted by the FAAAA under the Supremacy Clause of the United States Constitution.

8. Moreover, N.J.S.A. § 43:21-19(i)(7)(X), New Jersey's "Commercial Truck Drivers Exemption," directly regulates and exempts certain motor carriers from that which would otherwise be considered "employment" due to application of the NJ Independent Contractor Statute, and it does so in violation of the FAAAA.

9. The operators of certain commercial motor vehicles are not considered "employees" and the application and enforcement of the NJ Independent Contractor Statute as to these certain commercial operators of motor vehicles is irrelevant, if the following criteria must be met: (a) the vehicle used must weigh 18,000 pounds or more; (b) the vehicle must be licensed for commercial use; (c) the vehicle must be used for the highway movement of motor freight; (d) the operator of the vehicle must either own their equipment, or lease or finance the purchase of the equipment through an entity that is not owned or controlled directly or indirectly by the entity for which the services were performed; (e) "the operator must be compensated by receiving a percentage of the gross revenue generated by the transportation move or by a schedule of payment based on the distance and weight of the transportation move." This exemption is intended to apply to independent truck drivers.

10. However, the NJ Commercial Truck Drivers Exemption impermissibly violates the FAAAA because it sets forth regulations that substantially affect the prices, services and routes of motor carriers when the motor carriers do not meet the statutory criteria.

## PARTIES, JURISDICTION AND VENUE

11. PDX is a business, incorporated in the State of Pennsylvania and authorized to do business in the State of New Jersey. PDX is a company that facilitates, brokers and provides distribution and transportation services of wholesale auto parts to auto dealers and third party

3

auto suppliers throughout New Jersey, Pennsylvania, New York, Connecticut, Rhode Island, Massachusetts, and Vermont.

12. Defendant Robert Asaro-Angelo is sued in his official capacity as the Commissioner of the Department of Labor and Workforce Development of the State of New Jersey (the "Commissioner" of the "NJDOL"). N.J.S.A. § 34:1-6 and § 34:1A-6 authorize the Commissioner to enforce the provisions of Chapter 34 and 43, including N.J.S.A. § 43:21-19(i)(6) (the "NJ Independent Contractor Statute") and N.J.S.A. § 43:21-19(i)(7)(X) (the "NJ Commercial Truck Drivers Exemption"). New Jersey's laws also permit the Commissioner to impose liabilities, fines and penalties against those who it deems to have violated the provisions of the various laws that the Commissioner is charged with enforcing.

13. This action arises under the Constitution and laws of the United States, including the Supremacy Clause of the Constitution, Article VI, Cause 2; the Commerce Clause of the Constitution, Article 1, Section 8, Clause 3; and the FAAAA, 49 U.S.C. §§ 14501(c) and 14504a(c).

14. This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 2201.

15. This is a proceeding for declaratory judgment and injunctive relief under 28 U.S.C. §§ 2201, 2202, and the Supremacy Clause. This action presents an actual controversy within the Court's jurisdiction.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2), because the claims asserted in this Complaint are based on events occurring in this district, and Defendant maintains offices and performs official duties within this district.

## GENERAL ALLEGATIONS

17. The automotive industry is an integral part of the American economy, supporting millions of private sector jobs through auto manufacturers, suppliers, dealers, among others, which collectively pay millions of dollars in annual compensation to its various participants.

18. An integral segment of the automotive industry concerns after-market distribution and delivery of auto parts from the corporate auto and auto part manufacturers to the end users, including wholesale part suppliers, auto dealers, repair shops and third party auto part suppliers.  These after-market distributors and delivery services provide parts and equipment for the efficient and economical maintenance, repair and enhancement of the millions of vehicles in use in the United States.

19. PDX is one such company that facilitates and provides transportation and delivery services for the distribution of auto parts to various businesses and corporations in several states.

20. To meet their customers' demands, PDX contracts with entrepreneurial individuals on an "as-needed" basis to provide its important delivery services.  These independent owner-operators pick up and deliver auto parts and tires and deliver them to the repair shops, retailers, and auto dealers that request them.  Because the customers' needs and demands dictate the timetable for package transportation, and these shipments are often time-sensitive and unscheduled, the use of independent contractors enables PDX to maintain adequate service levels to its customers.

21. Thus, PDX engages in interstate commerce because it provides transportation of auto parts to their ultimate consumers that have been shipped by worldwide/national manufacturers and wholesalers in accord with anticipated customer demand.

22. As permitted by New Jersey law, the NJDOL conducted an audit for the time period January 1, 2006 through December 31, 2009, to determine whether PDX properly withheld and paid any unemployment compensation taxes for its employees (the "Initial Audit"). As a result of the Initial Audit, the NJDOL determined that PDX has a liability of $361,378.88 to the NJDOL. Broken down, this amount purportedly due consists of $213,305.34 in contributions; $111,396.72 in interest to May 7, 2012, at a rate of $87.67 per diem; and $36,676.82 in penalties. PDX does not agree with NJDOL's Initial Audit assessment, and has sought review before the Office of Administrative Law.

23. The NJDOL conducted a second audit for the time period of January 1, 2010 to June 30, 2012, to determine whether PDX properly withheld and paid any unemployment compensation taxes for its employees (the "Second Audit"). As a result of the second audit, the NJDOL determined that PDX has a liability of $598,850.39 to the NJDOL. Broken down, this amount purportedly due consists of $478,525.67 in contributions; and $120,324.72 in interest to April 15, 2013, at a rate of $196.67 per diem. PDX does not agree with NJDOL's Second Audit assessment, and has sought review before the Office of Administrative Law.

24. The NJDOL electronically filed the administrative judgments as to the Initial and Second Audits to preserve the State's ability to collect on them. Initial Audit, the Second Audit (collectively, the "Administrative Judgments"). The NJDOL filed the Administrative Judgments on or about July 28, 2015.

25. One month after PDX filed this action, the NJDOL commenced a third audit, this time for the period of January 1, 2013 to December 29, 2015, to determine whether PDX properly withheld and paid any unemployment compensation taxes for its employees (the "Third Audit"). On June 5, 2018, the NJDOL sent a letter to PDX, in which the NJDOL states it determined that

PDX has a liability of $871,062.56 to the NJDOL. PDX does not agree with NJDOL's Third Audit Assessment, and on July 2, 2018, PDX filed its Request for Hearing form with the NJDOL.

26. There is nothing to stop the NJDOL from instituting another audit of PDX for any additional time period(s).

### A. THE NEW JERSEY STATUTES UNLAWFULLY BAR PDX FROM UTILIZING INDEPENDENT CONTRACTORS.

27. The NJ Independent Contractor Statute provides a three-part test, which requires a finding that unless all of the three enumerated elements (commonly referred to as prongs A, B, and C) exist, an individual that provides services for remuneration shall be classified as an employee. N.J.S.A. § 43:21-19(i)(6). Under the NJ Independent Contractor Statute, the burden of proof is on the purported employer to demonstrate that the individual at issue is an independent contractor and not an employee. The inability of a purported employer to prove any one of the three prongs is sufficient to conclude that the individual in question is an employee.

28. The first or A prong of the NJ Independent Contractor Statute provides that the individual has been and will continue to be free from control or direction over the performance of the services provided, "both under his contract of service and in fact." If the purported employer cannot demonstrate this prong, then the individual is deemed to be an employee.

29. The second or B prong of the NJ Independent Contractor Statute provides that the service the individual performs must be "either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed." If the purported employer cannot demonstrate this prong, then the individual is deemed to be an employee.

30. The third or C prong of the NJ Independent Contractor Statute provides that the "individual is customarily engaged in an independently established trade, occupation, profession or business." If the purported employer cannot demonstrate this prong, then the individual is deemed to be an employee.

31. For purposes of this action, PDX asserts that it cannot demonstrate, to the satisfaction of the Commissioner, that the individuals it engages to provide transportation and delivery services satisfy all three prongs of the NJ Independent Contractor Statute.

32. In addition, PDX cannot satisfy the criteria set forth in the NJ Commercial Truck Drivers Exemption to the NJ Independent Contractor Statute because its drivers' trucks do not weigh more than 18,000 pounds, among the other criteria.

33. Because PDX cannot show that its drivers are independent contractors under the NJ Independent Contractor Statute, at least to the satisfaction of the Commissioner, and because PDX cannot satisfy the criteria to meet the NJ Commercial Truck Driver Exemption, PDX is forced to use employees to operate its business and cannot use independent contractors instead.

### B. THE BROAD PREEMPTIVE REACH OF THE FAAAA

34. The FAAAA provides in relevant part that "a State . . . may not enact or enforce a law, regulation, or other provision . . . related to a price, route or service" of any motor carrier. 49 U.S.C. § 14501(c).

35. The FAAAA was based on Congressional findings that the regulation of intrastate transportation of property by the states had "imposed an unreasonable burden on interstate commerce; [and] impeded the free flow of trade, traffic, and transportation of interstate commerce." Public Law 103-305, section 601(a). Through the FAAAA, Congress sought to ensure that interstate carriers are able to provide services subject exclusively to a

uniform body of federal law, and not by a "patchwork" of individual states' laws and regulations.  H.R. Conf. Rep. No. 103-677, § 601, at 87 (1994), reprinted in 1994 U.S.C.C.A.N. 1715, 1759. Congress thereby intended to remove obstacles to "national and regional carriers attempting to conduct a standard way of doing business."

### C. APPLICATION OF THE NJ INDEPENDENT CONTRACTOR STATUTE SUBSTANTIALLY AFFECTS PDX'S PRICES, ROUTES AND SERVICES

36. The application of the NJ Independent Contractor Statute to PDX prevents it from utilizing independent contractors.  Because PDX must use employees rather than independent contractors, the NJ Independent Contractor Statute directly affects the prices, routes, and services that PDX provides.

37. The broad preemptive scope of the FAAAA precludes the enactment and enforcement of state laws related to carriers' prices.  The requirement that PDX uses employees rather than independent contractors has a significant effect on prices. Because demand in the industry fluctuates, requiring PDX to use employees would force it to establish and maintain an employee workforce to meet peak demand, even when many of the employees would have little or no work at other times.

38. PDX also would need to considerably build its infrastructure (e.g., vehicles, administrative staff, maintenance staff, garages, etc.) and take on a large contingent of employees for the exact same number of deliveries.

39. Having to maintain employees on payroll to meet unpredictable and time-critical demands, rather than engaging independent contractors on an on-needed basis is inefficient, costly and wasteful.  The same is true with respect to the other administrative burdens and unnecessary overhead. Moreover, requiring PDX to convert their independent contractor

9

delivery drivers to employees would compel them to take on additional employment-related costs, including state and federal social security taxes and the state unemployment insurance tax. In addition, requiring PDX to convert their independent contractor delivery drivers to employees would also compel them to incur enormous expenses under the Patient Protection and Affordable Health Care Act ("Obamare"). As a result of these and other changes, PDX would need to raise prices to defray these substantial expenses, which in turn, would increase the prices that auto dealers and third party providers charge their consumers for the auto parts that PDX transports.

40. Similarly, the broad preemptive scope of the FAAAA precludes the enactment and enforcement of state laws related to carriers' routes. As independent contractors, PDX's drivers accept packages from different companies that have deliveries along their routes, particularly for more remote routes, to maximize their earning potential. This enables PDX's drivers to make deliveries to remote areas in a cost-effective manner. If PDX is required to treat all of their delivery drivers as employees, it would impede if not bar PDX from "pooling their resources." PDX would bear the burden of employing drivers to deliver packages to remote and less-populated areas alone. PDX may determine that such deliveries are economically unfeasible and decrease the frequency of or eliminate such routes altogether, which would have a significant effect on the routes that PDX currently operates.

41. Finally, the broad preemptive scope of the FAAAA precludes the enactment and enforcement of state laws related to carriers' services. The NJ Independent Contractor Statute violates that mandate because it regulates the manner in which delivery service companies must operate by effectively barring PDX from using independent contractors in New Jersey. If New

Jersey prohibits PDX from utilizing independent contractors, it will affect service because it will be driven out of business.

### D. APPLICATION OF THE NJ COMMERCIAL TRUCK DRIVERS EXEMPTION SUBSTANTIALLY AFFECTS PDX'S PRICES, ROUTES AND SERVICES

42. The application of the NJ Commercial Truck Drivers Exemption to the NJ Independent Contractor Statute bars PDX from benefiting from the exemption provided to some commercial truck drivers to the exclusion of others.

43. PDX cannot satisfy the exemption set forth in the NJ Commercial Truck Drivers Exemption of the statute because its drivers' vehicles do not weigh more than 18,000 pounds, among the other criteria. Accordingly, in order to use independent contractors to transport and deliver auto parts, PDX is forced to satisfy the provisions of the NJ Independent Contractor Statute, which it cannot do.

44. Because the NJ Commercial Truck Driver Exemption to the NJ Independent Contractor Statute would require PDX to meet certain regulatory standards before it would be exempt from the NJ Independent Contractor Test, the NJ Commercial Truck Driver Exemption prevents PDX from utilizing independent contractors. Because PDX must use employees rather than independent contractors, the NJ Independent Contractor Statute directly affects the prices, routes, and services that PDX provides.

45. The broad preemptive scope of the FAAAA precludes the enactment and enforcement of state laws related to carriers' prices. The requirement that PDX uses employees rather than independent contractors has a significant effect on prices. Because demand in the industry fluctuates, requiring PDX to use employees would force it to establish and maintain an

employee workforce to meet peak demand, even when many of the employees would have little or no work at other times.

46. PDX also would need to considerably build its infrastructure (e.g., vehicles, administrative staff, maintenance staff, garages, etc.) and take on a large contingent of employees for the exact same number of deliveries.

47. Having to maintain employees on payroll to meet unpredictable and time-critical demands, rather than engaging independent contractors on an on-needed basis is inefficient, costly and wasteful. The same is true with respect to the other administrative burdens and unnecessary overhead. Moreover, requiring PDX to convert their independent contractor delivery drivers to employees would compel them to take on additional employment-related costs, including state and federal social security taxes and the state unemployment insurance tax. As a result of these and other changes, PDX would need to raise prices to defray these substantial expenses, which in turn, would increase the prices that auto dealers and third party providers charge final consumers.

48. Similarly, the broad preemptive scope of the FAAAA precludes the enactment and enforcement of state laws related to carriers' routes. As independent contractors, PDX's drivers may accept packages from different companies that have deliveries along their routes, particularly for more remote routes, to maximize their earning potential. This enables PDX to make deliveries to remote areas in a cost-effective manner. If PDX is required to treat all of their delivery drivers as employees, it would impede if not bar PDX from "pooling their resources." PDX would bear the burden of employing drivers to deliver packages to remote and less-populated areas alone. PDX may determine that such deliveries are economically

unfeasible and decrease the frequency of or eliminate such routes altogether, which would have a significant effect on routes that PDX currently operates.

49. Finally, the broad preemptive scope of the FAAAA precludes the enactment and enforcement of state laws related to carriers' services. The NJ Independent Contractor Statute violates that mandate because it regulates the manner in which delivery service companies must operate by effectively barring PDX from using independent contractors in New Jersey. If New Jersey prohibits PDX from utilizing independent contractors, it will affect service because it will be driven out of business.

## COUNT ONE—FAAAA PREEMPTION

50. Plaintiff incorporates by reference all of the foregoing paragraphs as though set forth fully herein.

51. Congress has the power to enact the "supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, § 3, cl. 2.

52. An actual controversy exists among the parties because PDX cannot satisfy the criteria of the NJ Independent Contractor Statute of the New Jersey, and therefore are forced to staff their businesses with employees only, which is preempted by the FAAAA.

53. An actual controversy also exists among the parties because PDX cannot satisfy the regulations set forth in the NJ Commercial Truck Drivers Exemption of the statute because its drivers' vehicles do not weigh more than 18,000 pounds, among the other criteria. Accordingly, in order to use independent contractors to transport and deliver auto parts, PDX is forced to satisfy the provisions of the NJ Independent Contractor Statute to use independent contractors, which it cannot do.

54. Plaintiff fears the civil and criminal penalties and enforcement actions authorized under New Jersey law, as well as costly litigation.

55. The threat that this preempted law will be enforced prospectively against PDX, and the fact that it currently is being used to challenge their use of independent contractors, constitutes an irreparable harm that makes prospective injunctive relief appropriate. In addition to the imminent enforcement of the statute, its unconstitutionality itself reinforces the irreparable harm PDX faces.

56. The harm is irreparable for the additional reason that the Eleventh Amendment to the United States Constitution bars an award of retrospective monetary damages against the State or the individual defendant acting in his official capacity.

57. PDX is entitled to injunctive relief against enforcement of the NJ Independent Contractor Statute because it will continue to suffer irreparable harm from its enforcement.

## COUNT TWO—INTERSTATE COMMERCE CLAUSE

58. Plaintiff incorporates by reference all of the foregoing paragraphs as though set forth fully herein.

59. The Commerce Clause of the Constitution, Article 1, Section 8, Clause 3 protects the right to engage in interstate commerce free of undue burdens and discrimination by state governments.

60. The burden imposed by banning PDX's use of legitimate independent contractors is clearly excessive in relation to the putative local benefit of ensuring that non-legitimate independent contractors properly receive the protections to which they are entitled as employees.

61. The NJ Independent Contractor Statute establishes requirements that unlawfully require PDX to exclusively utilize employees rather than independent contractors.

62. The NJ Commercial Truck Drivers Exemption also imposes regulations to which PDX must adhere in order to use independent contractors.  Because the State impermissibly regulates the weight of the trucks in order to qualify for the exemption as an independent contractor, among other criteria, PDX is requires to satisfy the terms of the NJ Independent Contractor Statute, which it cannot do.

## COUNT THREE-28 U.S.C. §§ 2201, 2202

## (DECLARATORY RELIEF)

63. PDX incorporates by reference all of the foregoing paragraphs as though set forth fully herein.

64. Plaintiff brings this cause of action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, to obtain a declaration of its rights with respect to the NJ Independent Contractor Statute.

65. Plaintiff also brings this cause of action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, to obtain a declaration of its rights with respect to the NJ Commercial Truck Drivers Exemption to the NJ Independent Contractor Statute.

66. As alleged above, an actual controversy has arisen and now exists within the meaning of 28 U.S.C. § 2201, as to whether the NJ Independent Contractor Statute and the NJ Commercial Truck Drivers Exemption are preempted by the FAAAA pursuant to the Supremacy Clause of the United States Constitution.

67. The Court has the power to adjudicate the rights of the parties with respect to this controversy and should grant declaratory relief under 28 U.S.C. § 2201.

**WHEREFORE, PDX respectfully requests**:

a) a declaration that the NJ Independent Contractor Statute, N.J.S.A. 43:21-19(i)(6), is preempted by federal law under the FAAAA, the Supremacy Clause, and the Commerce Clause as to PDX;

b) a declaration that the NJ Commercial Truck Drivers Exemption, N.J.S.A. 43:21-19(i)(7)(X), is preempted by federal law under the FAAAA, the Supremacy Clause, and the Commerce Clause as to PDX;

c) a permanent injunction enjoining defendant from enforcing N.J.S.A. 43:21-19(i)(6) against Plaintiff;

d) enjoin prospective enforcement of the Administrative Judgments;

e) enjoin the performance of future audits for the purpose of enforcement of the NJ Independent Contractor Statute and the NJ Commercial Truck Drivers Exemption;

f) an order granting Plaintiff the costs incurred to bring forth this Complaint; and

g) such other and further relief as this Court may deem appropriate under law and equity.

Dated: July 26, 2018

                                                      **FOX ROTHSCHILD LLP**
*Attorneys for Plaintiff*
*PDX North, Inc.*

/s/ Corinne McCann Trainor
Jack L. Kolpen
Ian D. Meklinsky
Corinne McCann Trainor
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, New Jersey 08648-2311
Tel: (609) 896-3600
Fax: (609) 896-1469
CTrainor@FoxRothschild.com

16

## **L. CIV. R. 11.2 CERTIFICATION**

Plaintiff, by its undersigned counsel, hereby certifies that the matters in controversy in this case are not, to the best of its knowledge and belief, the subject of any other action pending in any court or of a pending arbitration proceeding, other than the matter captioned *PDX North, Inc. v. New Jersey Department of Labor and Workforce Development*, OAL Docket No.: LID 02451-2015 S, nor is any such action or arbitration proceeding contemplated.

Dated: July 26, 2018

**FOX ROTHSCHILD LLP**
Attorneys for Plaintiff
PDX North, Inc.

/s/ Corinne McCann Trainor_____
Jack L. Kolpen
Ian D. Meklinsky
Corinne McCann Trainor
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, New Jersey 08648-2311
Tel: (609) 896-3600
Fax: (609) 896-1469