NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PDX NORTH, INC. | |
| Plaintiff, | |
| and | |
| SLS DELIVERY SERVICES, INC. | Case No.: 3:15-cv-7011-BRM-TJB |
| Plaintiff-Intervenor, | |
| v. | **OPINION** |
| ROBERT ASARO-ANGELO, in his capacity as Commissioner of the New Jersey Department of Labor and Workforce Development | |
| Defendant. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are Defendant Robert Asaro-Angelo's Motion for Judgment on the Pleadings or for a Stay of Proceedings (ECF No. 63) and Plaintiff PDX North, Inc.'s ("PDX") Cross-Motion for Summary Judgment (ECF No. 69). Both motions are opposed (ECF Nos. 70, 74, & 78). Having reviewed all parties' submissions filed in connection with the motion and having declined to hear oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, the Defendant's Motion for Judgment on the Pleadings is **GRANTED**, and PDX's Cross-Motion for Summary Judgment is **ADMINISTRATIVELY TERMINATED**.

I.       FACTUAL AND PROCEDURAL BACKGROUND[1]

     A.       **New Jersey's Unemployment Compensation Law**

Robert Asaro-Angelo (the "Commissioner") is New Jersey's Commissioner of Labor and Industry and leads the state's Department of Labor and Workforce Development. *See* N.J. Stat. Ann. § 34:1A-2. The Commissioner enforces New Jersey's unemployment compensation law. *See id.* § 43:21-7f. The unemployment compensation law requires employers to pay into the state's unemployment compensation fund an amount in proportion to the wages each employer pays to its employees. *See id.* § 43:21-7. The statutory calculation exempts payments both to independent contractors and to certain commercial freight truck drivers. *See id.* § 43:21-19(i)(6), (i)(7)(X).

     B.       **PDX North, Inc.**

"PDX is a company that facilitates, brokers, and provides distribution and transportation services of wholesale auto parts to auto dealers and third-party auto suppliers throughout New Jersey, Pennsylvania, New York, Connecticut, Rhode Island, Massachusetts, and Vermont." (PDX's Am. Compl. ¶ 11.) The company specializes in providing its customers with these auto parts on demand, often on short notice. (*Id.* ¶ 20.) Given the nature of its business model, PDX's "shipments are often time-sensitive and unscheduled." (*Id.*) To meet customers' needs, the company contracts with drivers to perform deliveries. (*Id.*)

PDX characterizes its drivers as an independent contractors. (*Id.*) However, the company fears that its drivers will not meet the statutory exemption in § 43:21-19(i)(6) or (i)(7)(X). (*Id.* ¶ 6.) The company alleges that if it were forced to treat its drivers as employees

---

[1] When reviewing a motion for judgment on the pleadings, "[t]he court will accept the complaint's well-pleaded allegations as true, and construe the complaint in the light most favorable to the nonmoving party, but will not accept unsupported conclusory statements." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262-63 (3d Cir. 2008).

for purposes of the unemployment compensation law, the company would incur additional costs so great that its current business model would no longer be viable. (*Id.* ¶ 5.)

The Commissioner audited PDX three times in connection with the company's obligations under the unemployment compensation law, covering the years 2006-09 (first audit), 2010-12 (second audit), and 2013-15 (third audit). (*Id.* ¶¶ 22-25.) Following the audits, the Commissioner determined PDX owed a total of approximately $1.83 million in unpaid contributions to the unemployment compensation fund, interest on those unpaid contributions, and financial penalties. (*Id.*) PDX appealed the Commissioner's decision to the New Jersey Office of Administrative Law. *See PDX N., Inc. v. N.J. Dep't of Labor & Workforce Dev.*, OAL Dkt. No. LID 02451-2015 S (filed Feb. 19, 2015). PDX also brought this action seeking declaratory and injunctive relief against the Commissioner, alleging that the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 49 U.S.C. § 14501(c)(1), preempts New Jersey's unemployment compensation law, and the Dormant Commerce Clause, *see* U.S. Const., art. I, § 8, bars the enforcement of New Jersey's unemployment compensation law. (ECF No. 52 ¶¶ 50-67.)

The Court previously denied the Commissioner's motion to dismiss, holding that neither sovereign immunity nor the the *Rooker-Feldman*,[2] *Colorado River*,[3] or *Burford*[4] doctrines barred the Court from hearing this case on the merits, and PDX stated a valid claim for relief under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 22, at 6-10.) The Court also denied PDX's motion for summary judgment. (ECF No. 22, at 12.) The Commissioner subsequently moved

---

[2] *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482-87 (1983)*; Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-17 (1923).

[3] *Burford v. Sun Oil Co.*, 319 U.S. 315, 331-34 (1943).

[4] *Colo. River Water Consv'n Dist. v. United States*, 424 U.S. 800, 817-20 (1976).

for judgment on the pleadings, while PDX moved again for summary judgment.

### C. SLS Delivery Services, Inc.

"SLS is a motor carrier that facilitates and provides interstate distribution, delivery[,] and transportation services of packages as a contractor to national and international carriers between and within the States of New Jersey and New York." (SLS's Compl. ¶ 11.) The company's business model is to transport packages on-demand and as-needed between shipping companies—for instance, between the U.S. Postal Service and private shipper DHL. (*Id.* ¶¶ 24-25.) These inter-carrier "shipments are often time-sensitive and as-needed." (*Id.* ¶ 26.) SLS contracts with drivers to shuttle packages between shipping companies. (*Id.*)

SLS also characterizes its drivers as independent contractors. (*Id.* at ¶ 25.) However, the company alleges that its drivers will not meet the statutory exemption in § 43:21-19(i)(6). (*Id.* ¶ 6.) SLS alleges that if it were forced to treat its drivers as employees for purposes of the unemployment compensation law, the company would incur additional costs so great that its current business model would no longer be viable. (*Id.* ¶ 5.)

The Commissioner initiated an audit of SLS for the years 2013 to the present, in an effort to determine whether SLS improperly characterized its drivers as independent contractors and therefore underpaid its obligations to New Jersey's unemployment compensation fund. (*Id.* ¶ 28.) Although the audit is not yet complete, SLS expects that the audit will determine that SLS improperly characterized its drivers as independent contractors because the Commissioner "audited a substantially smaller entity affiliated with SLS with the same business model as SLS," and found that the smaller entity should not have characterized its drivers as independent contractors. (*Id.* ¶ 31.)

The Court granted SLS's motion to intervene as a plaintiff on July 27, 2018. (ECF No.

50.) The company filed its own complaint seeking declaratory and injunctive relief, arguing that the FAAAA preempts New Jersey's unemployment compensation law and that the Dormant Commerce Clause bars the enforcement of New Jersey's unemployment compensation law.

## II.  LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  When reviewing a motion for judgment on the pleadings, the Court may not review matters outside the pleadings without converting the motion into a motion for summary judgment.  Fed. R. Civ. P. 12(d).

"A court will grant a motion for judgment on the pleadings if the movant establishes that 'there are no issues of material fact, and that he is entitled to judgment as a matter of law.'" *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 390 (3d Cir. 2012) (quoting *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005)).  "In considering the motion for judgment on the pleadings, [this] Court [is] required to accept all of the [non-movants'] allegations as true and draw all reasonable inferences in their favor."  *Sherzer v. Homestar Mortg. Servs.*, 707 F.3d 255, 257 (3d Cir. 2013).

A motion for judgment on the pleadings is an appropriate vehicle to address an argument for abstention.  *See Disability Rights N.Y. v. New York*, 916 F.3d 129, 131 (2d Cir. 2019).

## III.  *YOUNGER* ABSTENTION

The Commissioner argues that this Court should abstain from exercising jurisdiction over the plaintiff's and plaintiff-intervenor's claims.  *See Younger v. Harris*, 401 U.S. 37, 44-45 (1971).  The Court agrees.

The *Younger* abstention doctrine provides that federal courts should generally abstain from exercising jurisdiction over cases that seek to interfere with certain types of pending state

litigation, when "the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987). One qualifying type of state litigation is "civil enforcement proceedings." *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans* ("*NOPSI*"), 491 U.S. 350, 368 (1989).

A qualifying "civil enforcement proceeding" has certain characteristics. Traditionally, courts looked to three so-called *Middlesex* factors: (1) whether there was an ongoing state proceeding that was judicial in nature, (2) whether the state proceeding implicated important state interests, and (3) whether the state proceeding offered an adequate opportunity for the federal plaintiff to litigate federal constitutional challenges. *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). However, recent decisions caution that "these three factors [are not] the alpha and omega of the abstention inquiry," and "were never intended to be independently dispositive." *Gonzalez v. Waterfront Comm'n of N.Y. Harbor*, 755 F.3d 176, 182 (3d Cir. 2014); *see also Hamilton v. Bromley*, 862 F.3d 329, 337 (3d Cir. 2017). Before analyzing the *Middlesex* factors, courts must first determine whether the state proceedings possess a quasi-criminal character. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 81 (2013).

### A. Quasi-Criminal Proceedings

"[Q]uasi-criminal proceedings of this ilk share several distinguishing features." *Gonzalez*, 755 F.3d at 181. For instance, the proceeding will "characteristically [be] initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act." *Sprint Commc'ns*, 571 U.S. at 79. This is more than mere "negative consequences." *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 140 (3d Cir. 2014). "Sanctions are retributive in nature

and are typically imposed to punish the sanctioned party 'for some wrongful act.'" *Id.* (quoting *Sprint Commc'ns*, 571 U.S. at 79). Sanctions must be more than the mere "cost of doing business, with the choice of whether to make such payment resting entirely with Plaintiffs." *Id.*

Additionally, "a state actor [will] routinely [be] a party to the state proceeding and often initiates the action." *Sprint Commc'ns*, 571 U.S. at 79. "To be sure, the Supreme Court has not directly held that *Younger* applies only when a state actor files a complaint or formal charges." *ACRA Turf Club*, 748 F.3d at 140. However, "the state's 'initiation' procedure must proceed with greater formality than merely sending a targeted advisory notice to a class of people that may be affected by new legislation." *Id.*

Often, "the proceeding [will be] both in aid of and closely related to criminal statutes." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975). A proceeding is more likely to be quasi-criminal if "the State could have alternatively sought to enforce a parallel criminal statute" that "vindicates similar interests." *ACRA Turf Club*, 748 F.3d at 138; *see also Trainor v. Hernandez*, 431 U.S. 434, 444 (1977); *Gonzalez*, 755 F.3d at 182. For that reason, "[i]nvestigations are commonly involved, often culminating in the filing of a formal complaint or charges." *Sprint Commc'ns*, 571 U.S. at 79-80; *see also Gonzalez*, 755 F.3d at 182.

While quasi-criminal proceedings may share many attributes with actual criminal prosecutions, they will differ in one key respect: unlike a criminal prosecution, a quasi-criminal proceeding need not occur before the state's judiciary. To the contrary, abstention will apply "to state administrative proceedings in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 627 (1986); *see also Gonzalez*, 755 F.3d at 182 (describing a state administrative

proceeding as "a textbook example of a quasi-criminal action").

The administrative proceedings in this case—which seek to recover unpaid unemployment compensation payments—constitute quasi-criminal proceedings because they meet all[5] of these elements. First, New Jersey's unemployment compensation law provides for sanctions against employers who are delinquent in their payment of unemployment compensation contributions. However, not all the remedies available to the Commissioner constitute sanctions. For instance, the Commissioner can institute a civil action to collect the unpaid contributions. N.J. Stat. Ann. § 43:21-14(b). Likewise, the Commissioner may collect interest on those unpaid contributions. *Id.* § 43:21-14(a). The statute authorizes the Commissioner to issue a certificate detailing an employer's liability for unpaid unemployment compensation contributions, and provides that the certificate "shall have the same force and effect as a judgment obtained in the Superior Court of New Jersey." *Id.* § 43:21-14(e).

The unemployment compensation law empowers the Commissioner with punitive remedies, as well. The Commissioner may fine an employer "who makes a false statement or representation, knowing it to be false, or who knowingly fails to disclose a material fact, . . . [in order] to avoid or reduce any contribution or other payment required" under the unemployment compensation law. *Id.* § 43:21-16(b)(1). "Any penalties imposed by this paragraph shall be in addition to those otherwise prescribed" by the unemployment compensation law. *Id.* The statutory scheme intends these fines to be punitive: the statute is itself entitled "Penalties;

---

[5] PDX argues a state proceeding necessarily lacks a quasi-criminal character if the proceeding is missing even a single one of the above attributes. This argument misunderstands the nature of the inquiry. These factors are not a mandatory checklist for quasi-criminal proceedings; instead, a court determining a state proceeding's quasi-criminal character weighs the factors above; no single factor is dispositive. *See Sprint Commc'ns*, 571 U.S. at 79-81 (noting that quasi-criminal proceedings "characteristically" exist to sanction the federal plaintiff, "commonly" following an investigation by a state actor who "routinely" is a party and "often" initiates the proceeding, "often" by the filing of formal charges).

investigative staff." *Id.* Because these fines are more than the mere cost of doing business, they constitute sanctions as contemplated by the *Younger* abstention framework.

Second, a state actor—the Commissioner—is a party to administrative proceedings. *See* N.J. Stat. Ann. § 34:1A-1 (establishing[6] the Department of Labor and Workforce Development); *id.* § 34:1A-2 (creating a "Commissioner of Labor and Industry" to head the department). No party contests that the Commissioner is a state actor.

Third, the state in its sovereign capacity initiated the administrative proceedings with sufficient formality. After conducting multiple audits, the Commissioner gave PDX formal notice of its liability for unpaid unemployment compensation contributions, interest, and penalties—including the exact amounts owed in each category. The Commissioner also filed certificates concerning PDX's liability—certificates with the force and effect of court judgments. *See id.* § 43:21-14(e). Because there are few, if any, legal documents with more formality than a court judgment, the filing of certificates with the force and effect of court judgments constitutes sufficiently formal notice from the Commissioner that it sought to initiate proceedings against PDX for unpaid unemployment compensation contributions.

PDX and SLS focus their argument not on the formality of the notice, but on the identity of the party who initiated the administrative proceedings. They characterize PDX—not the Commissioner—as the initiating party because PDX filed an administrative appeal of the Commissioner's liability determination. This argument places form over function. The Commissioner, not PDX, initiated an investigation and audit of PDX's unemployment compensation contribution payments. The Commissioner, not PDX, filed the certificates

---

[6] The New Jersey Legislature created the "Department of Labor and Industry" in 1948. *See* N.J. Stat. Ann. § 34:1A-1. A statute renamed the department to the "Department of Labor" in 1981. *See id.* § 34:1A-1.1. The department obtained its current name, "Department of Labor and Workforce Development," following a 2004 enactment. *See id.* § 34:1A-1.2.

concerning PDX's unemployment compensation liability—certificates with the force and effect of court judgments. The fact that PDX is technically the party seeking review before the Office of Administrative Law is a mere function of New Jersey administrative procedure.[7] PDX's request for review before the Office of Administrative Law merely continues the ongoing legal process initiated in substance by the state when the Commissioner began auditing PDX. Because the proceedings are, in substance, initiated by the state in its sovereign capacity, this factor weighs in favor of finding that the state administrative proceedings possess a quasi-criminal character.

Fourth, the administrative provisions to recover unpaid unemployment compensation contributions are in aid of, and are closely related to, criminal statutes. The criminal provisions are so closely related that they fall within the same statutory section as the civil enforcement language. *See* N.J. Stat. Ann. § 43:21-16. The criminal and civil enforcement provisions vindicate similar interests: namely, encouraging the prompt, full payment of unemployment compensation contributions and the recovery of unpaid payments. *Compare id.* § 43:21-16(e)(1) (criminal provisions), *with id.* § 43:21-16(b) (civil enforcement provisions). The investigation of civil non-payment violations in this case may lead to a potential criminal fraud prosecution. Accordingly, the close relationship between the administrative and criminal proceedings suggests that the administrative proceedings constitute quasi-criminal proceedings.

Because every factor weighs in this direction, the administrative proceedings at issue here possess a quasi-criminal character. The next step in the *Younger* analysis is to consider the

---

[7] Generally speaking, administrative proceedings begin "in the State agency with appropriate subject matter jurisdiction." N.J. Admin. Code § 1:1-3.1(a). The agency then transmits these cases to the Office of Administrative Law. *See id.* However, the agency may issue a rule or regulation assigning to the private party the obligation of seeking review in the Office of Administrative Law. *See* N.J. Stat. Ann. § 52:14B-9(g). The Commissioner has issued such a rule. *See* N.J. Admin. Code § 12:16-22.2(a).

*Middlesex* factors. *See Gonzalez*, 755 F.3d at 182.

B.     *Middlesex* **Factors**

*Middlesex* outlines three factors weighing in favor of abstention. *See id.* First, a court determines whether there was an ongoing state proceedings that is judicial in nature. *See NOPSI*, 491 U.S. at 370. This is not to say the proceedings must occur before the state's judiciary: administrative proceedings suffice, if they "command the respect due court proceedings." *Dayton Christian Schs.*, 477 U.S. at 627 (quoting *Gibson v. Berryhill*, 411 U.S. 564, 576-77 (1973)). Courts consider whether the state proceeding shares the hallmarks of court litigation: the "present[ation] of facts and evidence in an open hearing;" a decision-maker "empowered to make factual determinations with respect to the charges filed" against the federal plaintiff; whether the state proceeding provides the federal plaintiff "with an opportunity to be heard, the right to be represented by counsel, and the right to present evidence and witnesses on [the federal plaintiff's] behalf;" and whether the state courts have jurisdiction over any appeal of the "ultimate decision." *Gonzalez*, 755 F.3d at 183.

Second, a court considers whether the proceeding implicates important state interests. *See Middlesex Cty. Ethics Comm.*, 457 U.S. at 432. This inquiry focuses "narrowly [on the state's] interest in the *outcome* of the particular case—which could arguably be offset by a substantial federal interest in the opposite outcome. Rather, what [courts] look to is the importance of the generic proceedings to the State." *NOPSI*, 491 U.S. at 365.

Finally, a court inquires into whether the federal plaintiff has an adequate opportunity to raise federal constitutional claims in the state proceeding. *See Dayton Christian Schs.*, 477 U.S. at 627. Federal plaintiffs "need be accorded only an opportunity to fairly pursue their constitutional claims in the ongoing state proceedings, and their failure to avail themselves of

such opportunities does not mean that the state procedures were inadequate." *Juidice v. Vail*, 430 U.S. 327, 337 (1977) (citing *Berryhill*, 411 U.S. at 577). Where the decision-maker in the state proceeding is an attorney (not a lay-person), or is a body made up primarily of attorneys (rather than lay-persons`), courts assume that the decision-maker will entertain federal constitutional claims in the state proceeding. *Middlesex Cty. Ethics Comm.*, 457 U.S. at 435. The right to appeal the proceeding's result in a state court also demonstrates that a federal plaintiff will receive a hearing on any federal constitutional claims. *See Dayton Christian Schs.*, 477 U.S. at 629 (citing *Middlesex Cty. Ethics Comm.*, 457 U.S. at 436); *Gonzalez*, 755 F.3d at 184. Generally speaking, courts will assume the existence of an adequate opportunity to raise federal constitutional claims in the state proceeding unless state law explicitly prohibits the state decision-maker from considering them. *See Pennzoil*, 481 U.S. at 14; *Moore v. Sims*, 442 U.S. 415, 425-26 (1979); *Gonzalez*, 755 F.3d at 184.

All three *Middlesex* factors weigh in favor of abstention. First, the administrative proceedings at issue in this case are ongoing and judicial in nature. New Jersey's Administrative Procedure Act ("APA"), N.J. Stat. Ann. § 52:14B-1 *et seq.*, governs these administrative proceedings. *See* N.J. Admin. Code § 12:16-22.4. Courts routinely find that administrative proceedings governed by New Jersey's APA are "judicial in nature." *See Howard v. N.J. Div. of Youth & Fam. Servs.*, 398 F. App'x 807, 811 (3d Cir. 2010); *Zahl v. Harper*, 282 F.3d 204, 209 (3d Cir. 2002); *Getson v. New Jersey*, Civ. No. 07-3509, 2008 WL 11161698, at *6 (D.N.J. July 31, 2008).

The nature of APA proceedings demonstrates why. An administrative law *judge* presides over the hearing. *See* N.J. Stat. Ann. § 52:14B-10(c) (emphasis added). The proceeding must allow "all parties to respond, appear and present evidence and argument on all issues involved."

*Id.* § 52:14B-9(c). This includes the introduction of documentary evidence and the presentation of witnesses, including the right to cross-examination. *See id.* § 52:14B-10(a). New Jersey's APA generally requires that proceedings remain open to the public. *See* N.J. Admin. Code § 1:1-14.1(a). The state APA also entitles the parties to representation by counsel. *See id.* § 1:1-5.1. Following the close of evidence and argument, the administrative law judge makes findings of fact and conclusions of law. *See* N.J. Stat. Ann. § 52:14B-10(c); N.J. Admin. Code § 1:1-18.1. The Commissioner issues a final decision. *See* N.J. Stat. Ann. § 52:14B-10(d); N.J. Admin Code § 12:16-22.6(a). The state judiciary has jurisdiction over any appeal from the Commissioner's decision. *See* N.J. Court Rule 2:2-3(a)(2); N.J. Admin. Code § 12:16-22.6(b). Given these features, the administrative proceeding at issue here qualifies as judicial in nature. *See Zahl*, 282 F.3d at 209; *Getson*, 2008 WL 11161698, at *6.

Second, the proceedings below implicate an important state interest—namely, the timely and prompt collection of unemployment compensation payments. *Cf. Ardan v. Bd. of Rev.*, 177 A.3d 768, at 774-75 (N.J. 2018) (noting, outside the context of *Younger* abstention, that "[t]he Legislature enacted the Unemployment Compensation Law to further an important public policy"). This Court agrees with its sister courts that a state's "interest in the administration of its unemployment compensation system is a sufficiently important state interest to bring the case within the ambit of the *Younger* doctrine." *Kelly v. Lopeman*, 680 F. Supp. 1101, 1108 (S.D. Ohio 1987); *see also Bridgeforth v. U.S. Dep't of Labor*, Civ. No. 13-120, 2013 WL 1914313, at *4 (D. Del. May 7, 2013); *Lorah v. Delaware*, 2010 WL 2132059, at *3 (D. Del. May 25, 2010); *cf. Moore v. Ross*, 502 F. Supp. 543, 550 (S.D.N.Y. 1980) (finding that "the administration of unemployment insurance programs arguably constitutes a significant state interest" but declining to abstain under *Younger* because "there is presently no on-going proceeding").

Finally, the federal plaintiffs will have an adequate opportunity to raise any federal constitutional challenges in the state proceeding in light of their right to appeal any adverse administrative determination to the New Jersey judiciary. *See* N.J. R. Ct. 2:2-3(a)(2); N.J. Admin. Code § 12:16-22.6(b). The right to "appeal to the New Jersey Superior Court, Appellate Division" satisfies the requirement that the federal plaintiff have an adequate opportunity to raise constitutional claims in the state proceeding. *Gonzalez*, 755 F.3d at 184.

Because this quasi-criminal proceeding satisfies all three *Middlesex* factors, the Court will abstain from exercising jurisdiction over this case. As a result, PDX's complaint is dismissed. *Berryhill*, 411 U.S. at 577. PDX remains free to present its federal claims in the state proceedings. *Id.*

C. **"Pending" Proceedings**

SLS argues that even if *Younger* requires this Court to abstain from deciding PDX's action, *Younger* does not apply to SLS because unlike PDX, SLS is not a party to any "pending" state "proceedings." The Court disagrees in light of the broad scope of the phrase "pending proceeding" under *Younger*.[8]

The Supreme Court has issued dicta stating that *Younger* applies to federal actions that seek "to restrain an already-pending *or an about-to-be-pending* state criminal action, or civil action involving important state interests." *Morales v. TWA, Inc.*, 504 U.S. 374, 381 n.1 (1992) (emphasis added). For example, the Third Circuit held that federal plaintiffs subject to state

---

[8] Additionally, the Court finds that SLS has waived its argument that SLS is not party to any pending proceeding. "[C]asual mention of an issue in a brief is cursory treatment insufficient to preserve the issue" for review. *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993); *see also Vente v. Gonzales*, 415 F.3d 296, 299 n.3 (3d Cir. 2005). "[A]n argument consisting of no more than a conclusory assertion such as the one made here (without even a citation to the record) will be deemed waived." *Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997). SLS's brief makes only a passing reference to *Younger*'s "pending proceeding" requirement, without citing any authority. (ECF No. 74, at 16.)

child support obligations were parties to an "ongoing proceeding" for *Younger* purposes, even though the plaintiffs were "not currently appearing or scheduled to appear in any particular child support hearing." *Anthony v. Council*, 316 F.3d 412, 419 (3d Cir. 2003). "For purposes of *Younger*," the Third Circuit explained, "such a comprehensive and fluid system designed to address the ever-present and ever-changing realities of child support orders must be viewed as a whole, rather than as individual, discrete hearings," especially in light of the fact that the plaintiffs could expect to "be subject to future ongoing contempt proceedings." *Anthony*, 316 F.3d at 420-21. In the criminal context, courts have determined that the issuance of a grand jury subpoena and the issuance of a search warrant each constitute a "pending proceeding" under *Younger*, irrespective of whether any indictment was yet pending. *See Nick v. Abrams*, 717 F. Supp. 1053, 1056 (S.D.N.Y. 1989) (search warrants); *Notey v. Hynes*, 418 F. Supp. 1320, 1326 (E.D.N.Y. 1976) (grand jury subpoena).

SLS finds itself in a similar situation: the Commissioner has audited SLS for multiple tax years, and an assessment and subsequent administrative challenge are imminent. On these facts, the Commissioner's audit is part of a "pending proceeding" under *Younger*, even though SLS has not yet formally requested review before the Office of Administrative Law.

Because the Court previously considered and rejected all other arguments against *Younger* abstention,[9] *see* parts III.A. & III.B., *supra*, abstention is appropriate. Accordingly, SLS's complaint is dismissed. *See Berryhill*, 411 U.S. at 577. SLS remains free to submit its federal claims in the state proceedings. *See id.*

---

[9] SLS also adopts PDX's *Younger* arguments by reference and incorporates them into its brief. This Court generally permits this practice. *See, e.g.*, *Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 466 n.15 (D.N.J. 2013); *cf.* Fed. R. App. P. 28(i). Therefore, SLS has not waived any of the *Younger* arguments that PDX briefed and argued. However, PDX did not address the existence of a "pending proceeding." Accordingly, SLS's adoption and incorporation of PDX's arguments does not save SLS from waiver of any "pending proceeding" argument.

## IV. TAX INJUNCTION ACT

No party briefed whether the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, deprives this Court of jurisdiction over this case. Even so, a district court is generally "required to raise the issue on [its] own motion, as a determination that the [TIA] precludes a suit deprives the federal courts of subject matter jurisdiction over that action, and a state cannot waive the [TIA]'s protection" by failing to raise the issue. *In re Hechinger Inv. Co. of Del.*, 335 F.3d 243, 247 n.1 (3d Cir. 2003). While the general rule requires *sua sponte* consideration of the TIA, the general rule yields when there are multiple threshold issues which preclude a court from considering a case's merits. *See, e.g.*, *Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005) (noting that a court may choose to dismiss a case on abstention before addressing jurisdiction). Because the parties briefed the abstention issue but not the application of the TIA, judicial economy weighs in favor of deciding this case on the basis of abstention.

Nonetheless, the Court has significant doubts that the TIA would permit this action to go forward, even if abstention did not compel the same result. The TIA provides, "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. This action to enjoin the collection of New Jersey unemployment compensation contributions would appear to qualify. *See Sipe v. Amerada Hess Corp.*, 689 F.2d 396, 402-03 (3d Cir. 1982) (holding that "it cannot be seriously disputed that the unemployment compensation and disability benefits contributions mandated by New Jersey law are 'taxes' within the meaning of the" TIA and that the TIA's prohibition against judicial interference with any "essential administrative mechanism for the orderly collection of taxes" likewise applies to state unenemployment compensation statutes).

## V. CONCLUSION

For the reasons set forth above, the Commissioner's Motion for Judgment on the Pleadings is **GRANTED**, and PDX's Cross-Motion for Summary Judgment is **ADMINISTRATIVELY TERMINATED**. An appropriate order will follow.

**Dated:** July 29, 2019

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**